IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NIEESHA C.[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Civ. No. 3:24-cv-00428-CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

Plaintiff Nieesha C. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claims for supplemental security income benefits. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c) For the reasons provided below, the Commissioner's decision is AFFIRMED.

**PROCEDURAL BACKGROUND**

On November 25, 2020, Plaintiff protectively filed an application for supplemental security income, alleging disability beginning on November 10, 2011. Tr. 50. The claim was

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

denied initially and on reconsideration. Tr. 58, 69. Plaintiff requested a hearing before an administrative law judge and appeared before ALJ Richard Geib on November 15, 2022. Tr. 31-48. Plaintiff, represented by her attorney, and a vocational expert testified at the hearing. Tr. 31-48. The ALJ found Plaintiff not disabled in a written decision issued December 23, 2022. Tr. 15-25. The Appeals Council denied review on January 2, 2024, making the ALJ's decision the final agency decision. Tr. 1-6. Plaintiff's timely appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 12 years of age on her alleged onset date and has a limited education. Tr. 24, 50. She has no past relevant work. Tr. 23. She alleges disability due to depression, ADHD, and rheumatoid arthritis. Tr. 50.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. § 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

   a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 416.920(a)(4)(v); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

See also *Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work

which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 25, 2020, the date of her application. Tr. 17. At step two, the ALJ found that Plaintiff had the following severe impairments: "rheumatoid arthritis, obesity, and attention deficit hyperactivity disorder (ADHD)." *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of a listed impairment. Tr. 18. The ALJ found that Plaintiff had the RFC to perform light work with the following additional limitations:

> [she] can occasionally climb ramps, stairs, and ladders up to ten feet and never climb ropes or scaffolds; can frequently stoop, kneel, crouch, and crawl; can frequently handle and finger bilaterally; and can carry out simple instructions.

Tr. 19. At step four, the ALJ determined that Plaintiff has no past relevant work. Tr. 23. At step five, the ALJ found, in light of Plaintiff's age, education, work experience, and RFC, a significant number of jobs existed in the national economy such that Plaintiff could sustain employment despite her impairments, including such representative occupations as: production assembler, electrical accessories assembler, routing clerk, and housekeeping cleaner. Tr. 24. The ALJ thus found Plaintiff was not disabled within the meaning of the Act. Tr. 25.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the

Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff argues that remand is warranted because the ALJ improperly rejected the medical opinions of Beth Paraskeva, an advanced nurse practitioner (ANP), and Benjamin Houser, M.D., her primary care physician. Pl.'s Br. 4, ECF 9. For the reasons that follow, the Court concludes that the ALJ did not err in their assessment, and the Commissioner's decision is affirmed.

Under prior Social Security regulations, a hierarchy of medical opinions dictated the weight that must be given by an ALJ: treating doctors were generally given the most weight and non-examining doctors were generally given the least weight. *See* 20 C.F.R. §§ 404.1527, 416.927 (1991); 56 Fed. Reg. 36,932 (Aug. 1, 1991). For applications filed on or after March 27, 2017, the new regulations eliminate the old hierarchy of medical opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). Plaintiff filed an application for disability insurance benefits on March 2, 2018. Thus, the Commissioner's new regulations apply to the ALJ's assessment of

this opinion. *See* 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844 (Jan. 18, 2017); see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (correcting technical errors).

The new rules no longer provide for any inherent weight: "We [the SSA] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The SSA "considers" various medical opinions for claims filed on or after March 27, 2017, and determines which medical opinions are most persuasive. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In evaluating which opinions are most persuasive, the ALJ considers several factors. The two most important factors are supportability & consistency. *Id.* Secondary factors include the relationship with the claimant, specialization, and other factors. *Id.* at 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

### A. Beth Paraskeva, ANP

Paraskeva conducted a consultative examination on April 2, 2022, assessing Plaintiff's workplace limitations based on her impairments. Tr. 1440–50. In her opinion, Paraskeva stated that Plaintiff can sit from six to eight hours, stand and walk for up to two hours, occasionally bend, squat, handle, feel, and grasp, frequently reach, and can lift and carry at least 10 pounds frequently, and lift 20 pounds occasionally. Tr. 1447. Plaintiff also scored a 27/30 on the mini-mental state examination. Tr. 1448. Paraskeva also noted that Plaintiff had appropriate speech and mood, her memory and concentration were normal, her sensory exam was normal, and that

despite swollen hands and fingers, Plaintiff was able to lift, carry and handle light objects, dress and undress adequately, could fully extend her hand, make a fist, oppose her fingers, and pinch, grasp, and manipulate small and large objects without difficulty. Tr. 1442–44. Paraskeva further noted that Plaintiff could rise from a sitting position without assistance, had no difficulty getting up and down from the exam table, was able to walk on heels and toes, had normal tandem walking, and could only hop on one foot on her right foot. Tr. 1444. The ALJ determined that Paraskeva's medical opinion was unpersuasive because it was internally inconsistent with the observed clinical signs, as well as inconsistent with other evidence in the record, such as Plaintiff's lack of treatment, work activity, and reports that Plaintiff did not believe her symptoms were severe enough for greater treatment. Tr. 23.

Plaintiff contends that the ALJ failed to provide substantial evidence to support their interpretation of Paraskeva's medical opinion, that Plaintiff's work history does not contradict the medical findings, that Plaintiff's lack of treatment should not be held against her because of her ADHD, and that the ALJ failed to take into account whether Plaintiff was limited from seeking treatment. Pl.'s Br. 5–9, ECF 9. Plaintiff, however, is incorrect.

The ALJ noted that Paraskeva's limitations were internally inconsistent with the results of her conducted examination. Tr. 23. For example, Plaintiff was limited to occasional handling, feeling, and grasping, yet testing showed that while Plaintiff had 4/5 grip strength and swelling in her hands and fingers, she had no difficulty lifting, carrying, and handling light objects, could fully extend her hand, make a fist, and oppose her fingers, as well as pinch, grasp and manipulate small and large objects without difficulty. Tr. 1443–44. Plaintiff further argues that in not following the limitations assessed by Paraskeva, the ALJ is "substituting her own interpretation of CE Paraskeva's findings," and is therefore substituting her own judgment in place of the

medical expert's. Pl.'s Br. 6, ECF 9. However, Plaintiff is mistaken. Not only is an internal inconsistency a valid reason to reject a medical opinion, as it is here, an ALJ is "at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022); *see see also Rounds v. Comm'r, Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). Furthermore, an ALJ is not strictly beholden to the limitations assessed in a medical opinion, rather medical opinions are considered along with the entirety of the evidence of record. *See* 20 C.F.R. § 416.920c(a).

Next, Plaintiff argues that her work activity is not a valid basis upon which to reject Paraskeva's medical opinion, noting that while she did work, she worked only part-time at 12 hours a week in three-hour shifts and that was "about as long as she could manage," while also being "quite painful." Pl.'s Br. 7, ECF 9 (citing Tr. 41, 1135). Plaintiff, however, is misinformed. Any work activity may be considered when determining whether a claimant is disabled. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). Notably, while Plaintiff reported the walking as "quite painful," and her doctor believed the walking involved was "as long as she can manage with her arthritis," he also noted that she was using a treadmill at home which helped. Tr. 1135 Furthermore, while she was taking Naproxen for pain, which was mostly in her hands and wrists rather than her legs, she had only just reestablished care for her arthritis the day before the above report after declining rheumatoid arthritis treatment for the five months prior. Tr. 706–07, 1135, 1152. As such, Plaintiff's work activity was a valid reason to discount Paraskeva's medical opinion.

Plaintiff's last arguments, that her lack of treatment was due to her ADHD and an inability to seek treatment, are also without merit. First, Plaintiff was not limited in her ability to seek treatment at any point in the record. In fact, Plaintiff fails to cite any evidence to substantiate such an argument, rather citing to evidence of her obtaining ongoing treatment during COVID instead of showing how it was a hindrance. *See* Pl.'s Br. 9, ECF 9 (citing Tr. 1149, 1153, 1207–08, 1328). As for whether her ADHD was a contributing factor in why she chose not to pursue treatment, based on the record before this Court, Plaintiff actively denied treatment two months prior to her amended alleged onset date of November 20, 2020, because she believed her symptoms were not severe enough despite stating that her symptoms had been getting worse since 2019. Tr. 706, 1147. In fact, despite how much worse her symptoms were getting, she only chose to reestablish treatment in February 2021, five months later, with her expected to improve with treatment, only for her to consistently miss appointments because she was out of town. Tr. 1152, 1326, 1400, 1468. Plaintiff did not reestablish care again until February 2022. Tr. 1467. Furthermore, given the lack of ambiguity, the ALJ was not required to inquire about any such difficulties related to Plaintiff's ability to acquire treatment. Therefore, Plaintiff's denial of treatment was a valid reason to reject Paraskeva's opinion.

Given the above, the ALJ did not err in rejecting Paraskeva's medical opinion because inconsistency with medical records and inadequate support by clinical findings serve as specific, legitimate reasons for rejecting a physician's opinion. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Andrews v. Shalala*, 53 F.3d 1035, 1042–43 (9th Cir. 1995). In light of this evidence, the Court concludes that the ALJ's interpretation of the record was reasonable, and the Court will not second guess the ALJ's findings. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,

1161 (9th Cir. 2008) ("[W]e conclude [that the ALJ's] interpretation of the evidence is reasonable and we will not second-guess it.") (citation omitted).

### B. Benjamin Houser, M.D.

Dr. Houser provided a medical opinion on May 17, 2021, in which he stated that Plaintiff could return to light duty immediately but only for four-hour shifts as her functional assessment made it clear that was all she could physically tolerate. Tr. 1340. The ALJ rejected Dr. Houser's opinion because it referenced a functional assessment that is not in the record and was inconsistent with Dr. Houser's own treatment records and Plaintiff's lack of treatment. Tr. 22–23.

Plaintiff contends that while the referenced functional assessment may not be in the records, Dr. Houser was aware of her treatment and those treatment notes support his opinion. Pl.'s Br. 9–10, ECF 9. Plaintiff's argument, however, is unavailing.

First, it is questionable as to whether Dr. Houser's two sentence statement even qualifies as a medical opinion, as a medical opinion must state what a claimant can still do despite their limitations. *See* 20 C.F.R. § 416.913(a)(2). Assuming it does, however, neither the ALJ nor this Court can provide any weight to an assessment that it cannot review. Plaintiff argues that other treatment notes provide the context for Dr. Houser's opinion, but Plaintiff is incorrect. An occupational therapist saw the referenced functional assessment and noted that Plaintiff should be referred to a physical therapist in order to maximize her functional abilities and manage her rheumatoid arthritis, but there is no indication she ever followed through. Tr. 1361–62. Prior to providing his medical opinion, Dr. Houser noted that Plaintiff declined rheumatoid arthritis treatment in September 2020 because her symptoms were "not so bad," only seeking to reestablish care five months later, in February 2021. Tr. 706, 1152. During Plaintiff's

reenrollment in arthritic care, her rheumatologist, Dr. Davies, reported on May 5, 2021, that with appropriate treatment she did "not anticipate ongoing disability," despite finding a host of physical limitations, such as an inability to make a fist, decreased grip strength, swollen hands, right knee tenderness, both knees hyperextending with pain, and discomfort with ankle movement Tr. 1326, 1329, 1364. This note was made 12 days prior to Dr. Houser issuing his opinion. Plaintiff, however, never followed through with appropriate treatment and was released from the program following missed appointments, appointments missed because she was out of town. *See* Tr. 1468. She then waited nine months to reestablish care. *Id.*

Therefore, the ALJ did not err in rejecting Dr. Houser's medical opinion for inconsistency and inadequate support. While Plaintiff may wish for a different reading of the record, as stated above, this Court will not disturb a reasonable interpretation of the evidence.

## CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED.

It is so ORDERED and DATED this 10 day of March, 2025.

MARK D. CLARKE
United States Magistrate Judge